Jensen & Son v. Jasperite Co.

---

M. B. JENSEN & SON, APPELLEE AND CROSS-APPELLEE, V. JASPERITE COMPANY ET AL., APPELLANTS AND CROSS-APPELLEES: ITEN BISCUIT COMPANY, CROSS-APPELLANT: GEORGE W. PLATNER ET AL., INTERVENERS, APPELLEES AND CROSS-APPELLEES.

FILED MAY 26, 1923. No. 22382.

**Evidence** examined, and *held* to sustain the judgment of the district court as modified.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed as modified.*

*Carl E. Herring* and *Arthur C. Pancoast,* for appellants.

*Edward R. Burke, Mortgomery, Hall & Young, Alvin F. Johnson, Baldrige & Saxton* and *Morsman, Maxwell & Haggart, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., BUTTON, District Judge.

DAY, J.

This action was brought by M. B. Jensen & Son against the Iten Biscuit Company, hereinafter called the Iten Company, and Carl B. Kraus, doing business under the name of the Jasperite Company, to foreclose a mechanic's lien upon certain real estate owned by the Iten Company. The plaintiff alleged in its petition that there was a balance of $5,481.89 due it, and prayed for a foreclosure of its lien for that amount. Plaintiff also prayed for a personal judgment for the same sum against the defendant Kraus, who was the contractor under whom plaintiff rendered the service and furnished materials as subcontractor. Kraus filed an answer to the plaintiff's claim, admitting that plaintiff was subcontractor under him, and alleged that plaintiff did not fully perform its contract; that the work done by it was so defective that he was obliged to again do the work which plaintiff had contracted to perform; that the cost to him amounted to more than the unpaid balance which plaintiff claimed; and prayed that an accounting be had between himself and plaintiff, that the lien of plaintiff be canceled and its cause of action dismissed. Kraus also filed a cross-petition against the Iten Company, claiming that there was due him upon his contract with the Iten Company the sum of $6,535.07, and prayed for an accounting and a judgment against the Iten Company. The Iten Company filed answers to the respective petitions, and also a cross-petition against Kraus, praying for damages

against him for failing to perform his contract, and for an accounting. George W. Platner and Sunderland Brothers, who had furnished materials to Kraus for a part of the work, and who had filed liens upon the Iten Company's property, intervened and prayed that their respective liens be foreclosed.

The trial court decreed a foreclosure of the lien of Jensen & Son against the Iten Company's property for $4,997.70, and also rendered a personal judgment in favor of Jensen & Son against Kraus for the same amount. The court also decreed a foreclosure against the Iten property of the liens of George W. Platner and Sunderland Brothers for $907.07 and $1,298.57, respectively, and rendered a personal judgment against Kraus in favor of Platner and Sunderland Brothers for the amounts of their respective claims. In the accounting between the Iten Company and Kraus, the court found that upon the payment by the Iten Company of the amounts found to be due to Jensen & Son, George W. Platner, and Sunderland Brothers, there would be a balance due from Kraus to the Iten Company of $1,966.84, and entered judgment accordingly. From this judgment Kraus appeals, and the Iten Company files a cross-appeal.

It thus appears that the issues presented by the respective pleadings call for an accounting between Jensen & Son, Kraus, and the Iten Company. A number of objections which are more or less technical will be brushed aside.

The record shows that the Iten Company is engaged in the production of food products upon a large scale in the city of Omaha. It was constructing an eight-story addition to its plant, and was desirous that the floors of the building should have a hard, smooth surface capable of standing wear. About this time the Iten Company came in contact with Kraus, who claimed that he had a new process of producing a hard, glossy, durable finish on cement floors, by troweling into the mixture a com-

position of dry cement and jasperite. Thereupon the Iten Company entered into a contract with Kraus to put a one-inch topping on the floors of the building for 12 cents a square foot, the finish to be 1 part cement to $1\frac{1}{4}$ parts clear Platte river sand, jasperite to be troweled into the surface, using not less than 50 pounds to 100 square feet. Kraus guaranteed the floor against wear, and agreed to replace any part showing signs of wear within a period of 18 months. The work was to be done in a satisfactory and workmanlike manner. Kraus in turn sublet the work to Jensen & Son for 9 cents a square foot, Kraus agreeing to furnish the jasperite, the work to be done in the best workmanlike manner to the satisfaction of the owner. The written contracts between the Iten Company and Kraus, and Kraus and Jensen & Son, were very incomplete, and were supplemented by oral agreements.

The Iten Company had made arrangements for the purchase of cement for the construction of the entire building a year before the contract with Kraus was made, and furnished the cement used at a figure below the then market price. Kraus also agreed with Jensen & Son to assist them in the purchase of material by procuring the same in conjunction with other materials in the building.

We first consider the claim of Jensen & Son. The trial court reduced the amount claimed by plaintiff a considerable sum, the largest item arising out of the fact that the plaintiff had charged 10 cents a square foot, whereas under its contract plaintiff was entitled to charge but 9 cents a square foot for the work.

Kraus urged that there should have been a further reduction in the plaintiff's claim, because of poor workmanship on the part of plaintiff which necessitated Kraus again doing part of the work at a great expense to himself.

It appears that the Iten Company complained of the floors and particularly those laid on the second and

third floors of the building. After a conference was held between the Iten Company, Kraus, and Jensen & Son, in which Jensen & Son disclaimed any responsibility for the condition of the floors, an arrangement was made between the Iten Company and Kraus by which Kraus for a consideration agreed to retop the second and third floors of the building, which he afterwards did.

The testimony upon this phase of the case shows that the plaintiff's workmen were experienced craftsmen in cement work; that the materials used were furnished by Kraus; that under the direction of Kraus the mixture of sand and cement was on the basis of one part cement to two parts sand; and that the dry coating of jasperite, which was furnished by Kraus, was put on and troweled in under the supervision and direction of Kraus. This jasperite finish was a new process which was promulgated by Kraus, and he directed the manner in which it should be laid. As the work progressed it became apparent that the use of the jasperite in the manner in which it was being used on the second and third floors was not producing a satisfactory floor, and thereafter the jasperite was run through a very fine screen, producing much better results on the other floors. It is claimed by Kraus that the faulty condition of the floors was the result of poor workmanship on the part of Jansen & Son. Upon this phase of the case, however, the testimony indicates that the imperfect condition of the floors could be attributed to so many causes for which the plaintiff was not in any wise responsible that we are hardly justified in holding that the condition of the floors arose out of faulty workmanship on the part of the plaintiff. We are of the view, therefore, that the trial court was right in refusing to reduce the plaintiff's claim on account of the fact that Kraus subsequently had to again do a part of the work at a great expense to himself.

We come now to a consideration of the testimony upon the issue between the Iten Company and Kraus. As

before stated, Kraus claimed that there was due him from the Iten Company a balance of $6,535.07. The Iten Company claimed that under his contract Kraus was obliged to finish the floors with a mixture of cement and sand in the proportion of 1 part cement to 1¼ part sand, but that in doing the work the mixture used was in the proportion of 1 part cement to 2 parts sand; that by doing the work in this manner Kraus did not use the amount of cement required by his contract; that he saved to himself in this manner 620½ barrels of cement, of the value of $3,226.60. The Iten Company also claims that after the entire job was finished, the floors proved so unsatisfactory that it was obliged to have the greater part of the floors refinished at a cost of $4,768.27, which it charges was a reasonable amount for the work done. The Iten Company prayed for an accounting. Kraus pleaded that the matters of offset claimed by the Iten Company had been settled.

Considering the evidence bearing upon the claim by the Iten Company for $4,768.27 for refinishing the floors, it appears that after the floors were completed by Jensen & Son, or practically so, the Iten Company made objections to the floors, particularly to the second and third floors, in that the jasperite used in the topping worked out and left small pits in the surface. An arrangement was made whereby Kraus agreed to refinish the second and third floors, for which the Iten Company agreed to pay the sum of 2½ cents a square foot. This contract was reduced to writing. While the written contract is silent on the question, the testimony tends to show that one of the inducements to the contract was the acceptance of the other floors by the Iten Company. This work of refinishing the second and third floors was done by Kraus, and proved satisfactory. Without discussing the evidence, we think it was fairly within the contemplation of the parties that, upon the performing of the extra work by Kraus, all the floors were to be accepted by the Iten Company. We think the trial court was

right in refusing any offset based upon this item of damage claimed by the Iten Company.

Considering now the claim of the Iten Company based upon the allegation that Kraus did not use the quantity of cement required by his contract, the testimony in behalf of the Iten Company shows that it would have required from 620 to 625 more barrels of cement to do the work in compliance with the contract than was actually used. The testimony in behalf of Kraus shows that it would have taken 555 more barrels of cement than was used. On this question the trial court found that there was a shortage of 585 barrels of cement, which the court found to be worth $2.24½ a barrel. As we view the evidence, there is no basis for finding the number of barrels to be 585. The evidence is undisputed that there were used in the job 925 barrels of cement, and that it was put in at the ratio of 1 part cement to 2 parts sand, instead of at the ratio of 1 part cement to 1¼ parts sand. Based upon tables of calculation used by engineers, we conclude that the correct amount of the shortage is 555 barrels.

The Iten Company also claims that the allowance by the court of $2.24½ per barrel was much below the market price of cement at that time. Upon this point the evidence tends to show that the Iten Company had arranged to purchase the cement for the entire building a year before the contract was made with Kraus, and were furnishing the cement for this work at $2.24½ a barrel. It seems reasonably clear that if the contractors had called for 555 more barrels of cement to finish the job, the Iten Company would have furnished the same at the same price of $2.24½. Upon the trial it was admitted by the parties that had Kraus fully performed his contracts, there would have been due him from the Iten Company $13,657.69, made up of items as follows:

> Original contract................$12,096.84
> For replacing 2d and 3d floors...     771.10

For use of hoisting engine...... 14.75
For empty sacks............. 775.00

Total....................$13,657.69

It was also admitted that the Iten Company had paid in cash and credits upon this account the sum of $7,107.87. This would leave a balance due Kraus of $6,549.82. Against this amount the Iten Company are entitled to a credit for a shortage in the cement of 555 barrels at $2.24½ a barrel, totaling the sum of $1,245.97. Striking a balance between the amounts of the Iten Company and Kraus, there would be due and owing to Kraus $5,303.85. The trial court decreed that if the Iten Company should pay the lien of Jensen & Son of $4,997.70, and the lien of Platner for $907.07, and the lien of Sunderland Brothers for $1,298.57, in the aggregate amounting to $7,203.34, there would then be due from Kraus to the Iten Company the sum of $1,966.84. As above stated, this amount was arrived at by the trial court determining that the amount of shortage in the cement used was 585 barrels. Our examination of the evidence convinces us that the amount of shortage of cement was 555 barrels, which, on the basis of $2.24½ a barrel, would make the amount due from Kraus to the Iten Company $67.35 less than the amount found by the trial court.

It is the contention of Kraus that all matters of difference between himself and the Iten Company arising out of the claim that he had not performed his contract in accordance with its terms were fully settled by the parties by the contract of September 10, 1920, including the item now made for shortage of cement.

As before stated, after Jensen & Son had completed the work on all the floors except the eighth, the Iten Company refused to accept the work, and a conference was had between Iten Company, Kraus and Jensen & Son. The testimony shows that all the floors were examined; that the Iten Company complained that they were not satisfactory, particularly the second and third

floors. Finally it was agreed that, if Kraus would re-
finish the second and third floors, the work would be
accepted. An agreement was thereupon entered into
whereby Kraus was to retop the second and third floors,
for which the Iten Company agreed to pay an additional
sum of 2½ cents a square foot. This additional work
was done by Kraus at a considerable expense. In fact
the materials furnished by Platner and Sunderland
Brothers were used by Kraus in refinishing the second
and third floors, and topping the eighth floor. All of
the conversation leading up to the agreement related to
the condition of the surface of the floors, nothing was
said about there being a shortage of cement used in
the performance of the work, and there is nothing in
the written contract to suggest that the question of
shortage was in the minds of either of the parties at
the time the agreement was made. We are of the
opinion that the only matter settled related to the con-
dition of the floors. It appears that one of the officers
of the Iten Company knew at the time the settlement
was made that the full amount of cement called for in
the contract had not been used, but, as before stated,
this item was not discussed or considered.

Considering the entire record, we are of the view that
the trial court was right in holding that the settlement
did not include any damages which the Iten Company
sustained by reason of the fact that less cement was used
in doing the work than was called for in the contract.
The proposal of Kraus to do the work was made upon
the understanding, clearly expressed, that there was to
be used 1 part cement to 1¼ parts sand. This he failed
to do. It is no answer to say that a better floor was
produced by the use of a mixture containing 1 part
cement to 2 parts sand. It seems only just that his
contract price be reduced to the extent of the value of
the cement he should have used and failed to put in.

From what has been said it follows that the judgment
of the trial court should be modified to the extent of

reducing the item of $1,313.32, the value of the cement, to $1,245.97. As thus modified, the judgment of the trial court is affirmed. The costs in this court are to be paid by the appellant.

AFFIRMED AS MODIFIED.